IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMMETT MARTIN SCHOLTEN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 20-275-E |

ORDER

AND NOW, this 17th day of March 2022, having considered the parties' motions for summary judgment, the Court will grant Defendant's motion. The agency's decision in this matter—which is the Administrative Law Judge's ("ALJ") decision due to the Appeals Council's denial of Plaintiff's request for review (R. 1)—denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence. Therefore, it will be affirmed. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[1]

---

[1] Plaintiff applied for benefits under Titles II and XVI of the Act on August 11, 2017, later withdrawing his Title II application. (R. 17). The ALJ who heard Plaintiff's case concluded that, despite his impairments, Plaintiff possessed the residual functional capacity ("RFC") to perform at least three light-work occupations. (R. 27). Because those occupations corresponded to a significant number of jobs in the national economy, the ALJ denied Plaintiff's application for Title XVI benefits. (*Id.*). Plaintiff argues that decision is not supported by substantial evidence because the ALJ failed to evaluate certain medical opinion evidence according to the regulations that dictate how ALJs are to consider such evidence for claims filed on or after March 27, 2017. As the Court explains herein, it has found no harmful error in the ALJ's consideration of the medical opinion evidence at issue. Accordingly, the Court will grant Defendant's motion for summary judgment.

ALJs use a five-step sequential evaluation to assess disability under the Act. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)—(f), 416.920(a)—(f)). The five-steps are essentially five inquiries wherein the ALJ asks whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*Id.* The findings that the ALJ makes in the course of this evaluation must be supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted).

Though substantial evidence review is deferential, ALJs must facilitate it by supporting decisions with "a glimpse into [their] reasoning." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citation omitted). That "glimpse" must reveal "an accurate and logical bridge between the evidence and the result." *Id.* (citation omitted). The ALJ must explain the weight he afforded probative evidence and, if necessary, why he rejected any probative evidence. *Id.* (citing *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981)) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."). If the ALJ's decision lacks citation to adequate support, fails to connect the evidence and the result, or lacks appropriate acknowledgment and discussion of probative evidence, a reviewing court "approaches an abdication" of its duty under the Act if it proceeds to find the decision is supported by substantial evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (citations omitted).

The issue in this case is whether the ALJ's consideration of certain medical opinion evidence is adequate. For applications filed on or after March 27, 2017, ALJs' consideration and discussion of medical opinion evidence and prior administrative findings must conform to the framework at 20 C.F.R. § 416.920c. Pursuant thereto, ALJs make a finding as to medical opinion and prior administrative findings' persuasiveness. *Id.* § 416.920c(b). Five factors inform persuasiveness: "[s]upportability," "[c]onsistency," "[r]elationship with the claimant," "[s]pecialization," and "[o]ther factors." *Id.* § 416.920c(c). Supportability and consistency are the two most important factors. *Id.* § 416.920c(a). Therefore, ALJs always articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." *Id.* § 416.920c(b)(2).

Seeking remand, Plaintiff argues that the ALJ erred in his consideration of the opinion evidence offered by the consultative examiner ("CE"), and therefore, that the Court cannot find the decision is supported by substantial evidence. The opinion evidence in question was prepared by the CE, Dr. Kurt A. Weber, Ph.D., who examined Plaintiff in October 2017 and completed a mental status evaluation. (R. 381—86). According to Dr. Weber's notes, Plaintiff was incarcerated at that time and anticipating his release within a month or two. (R. 382). Plaintiff reported to Dr. Weber that his daily activities consisted of reading, meditating, and

2

learning Norwegian. (*Id.*). Plaintiff also indicated that he could "independently help with housework, help with laundry, prepare simple meals," read articles from newspapers and magazines, use a computer, communicate with others, take medications, travel, and shop, though he reported that his "physical and emotional concerns" were limiting. (*Id.*). Dr. Weber observed Plaintiff to be adequately groomed and cooperative with an appropriate affect of "mildly heightened intensity." (R. 383—84). He further found Plaintiff was fully oriented with adequate memory. (*Id.*). Plaintiff had some difficulty on two tests Dr. Weber employed to assess concentration—he erred twice on a serial threes test and was unable to spell WORLD in reverse. (R. 384). Despite those errors, Plaintiff "had no apparent problem in following the conversation at any point during the assessment." (*Id.*). At the conclusion of the examination, Dr. Weber diagnosed Plaintiff with generalized anxiety disorder and unspecified depressive disorder and indicated Plaintiff's prognosis was fair whilst cautioning Plaintiff against discontinuing psychotherapy or straying from an appropriately supervised medication regimen. (R. 385—36). Dr. Weber also offered his assessment of Plaintiff's limitations, opining that in interacting with others, Plaintiff "should experience moderate to marked limitations." (R. 386). For concentrating, persisting, or maintaining pace, he again opined that Plaintiff "should experience moderate to marked limitations." (*Id.*). For adapting or managing oneself, Dr. Weber opined Plaintiff would experience a "marked" limitation. (*Id.*). And for understanding, remembering, and applying information, Dr. Weber indicated Plaintiff would only experience "mild to moderate limitations." (*Id.*). Dr. Weber did not explain the meaning of the terms he employed, that is, he did not articulate the difference between, *e.g.*, moderate-to-marked limitations and marked limitations.

The ALJ considered Dr. Weber's evaluation, but found it was "not persuasive" because it was "both inconsistent with the evidence and unsupported." (R. 22—23). To support that assessment, the ALJ offered one example of inconsistency, explaining that it was inconsistent of Dr. Weber to opine a "marked" limitation in adapting and managing oneself when his own examination of Plaintiff revealed that Plaintiff could communicate, prepare meals, help with housework and laundry, and take his medications independently. (R. 23). Plaintiff argues that the *internal inconsistency* cited by the ALJ to justify his rejection of the adapt-or-manage limitation is insufficient where the regulations direct ALJs to consider an opinion's consistency with other evidence in the record. He also argues that the ALJ only found Dr. Weber's adapt-or-manage limitation was inconsistent with Dr. Weber's exam findings because the ALJ mischaracterized the latter. Finally, Plaintiff argues that the ALJ largely ignored Dr. Weber's other relevant opinions—*i.e.*, that Plaintiff would experience moderate-to-marked limitations in interacting with others and concentrating, persisting, or maintaining pace—when he decided the entirety of Dr. Weber's evaluation was not persuasive by reference to just one internally inconsistent opinion.

As the Court explained above, supportability and consistency are the two most important factors in an ALJ's persuasiveness finding(s). 20 C.F.R. § 416.920c(b)(2). The Court is satisfied with the ALJ's consideration of the supportability factor for Dr. Weber's opinions. Though the ALJ only briefly found that Dr. Weber's opinions lacked support, that finding is self-evident from the evaluation wherein Dr. Weber explained his opinions by fleeting reference to Plaintiff's *"*work history and interpersonal concerns," "responses to the mental status

---

examination," and "his mental health concerns." (R. 386). Looking to the ALJ's evaluation of consistency for Dr. Weber's adapt-or-manage limitation (R. 23), the Court will not rule out internal inconsistency as a permissible basis for degrading an opinion's persuasive force. Plaintiff argues that consistency should be gauged against *other evidence* in the record, not against other parts of the exhibit under consideration. Plaintiff further argues that the relevant subsection of the applicable regulation supports this interpretation. Therein, consistency is described as a measurement against "evidence from *other medical sources and nonmedical sources* in the claim." 20 C.F.R. § 416.920c(c)(2) (emphasis added).

The Court acknowledges that internal consistency (or lack thereof) is not specifically mentioned at Section 416.920c(c)(2), however, consistency among a medical source's examination findings and his or her opinions has long been accepted as an appropriate consideration when ALJs review medical opinion evidence. Under the old regulations—applicable to applications that were filed before March 27, 2017—consistency was a factor ALJs considered toward the weight they would afford medical opinion evidence. 20 C.F.R. § 416.927(c)(4). Under Section 416.927(c)(4), consistency was measured against "the record as a whole." *Id.* Though internal inconsistency was not specifically mentioned therein, reviewing courts routinely accepted internal inconsistency as an appropriate basis for devaluing medical opinion evidence. *See e.g.*, *Page v. Barnhart*, 108 Fed. Appx. 735, 738 (3d Cir. 2004); *Rimel v. Astrue*, 521 Fed. Appx. 57, 59 (3d Cir. 2013); *Hansford v. Astrue*, No. CIV.A. 12-905, 2013 WL 1622408, at *1 n.1 (W.D. Pa. Apr. 15, 2013). Because internal inconsistency has long been accepted as a legitimate reason for devaluing a medical source's opinion, the Court declines to find that the updated Section 416.920c(c)(2) effectively forbids ALJs from considering internal inconsistency in their evaluation of medical opinion evidence. This conclusion is most consistent with the substantial evidence standard, which only requires enough evidence to satisfy a reasonable mind. *See Williams*, 970 F.2d at 1182. A reasonable mind would certainly be able to accept that a medical opinion lost persuasive force because the medical source's own examination findings contradicted his or her professional opinion(s).

The Court also rejects Plaintiff's argument that the ALJ set aside Dr. Weber's marked adapt-or-manage limitation by mischaracterizing Plaintiff's daily activities. To that end, Plaintiff argues that "the ALJ failed to account for the manner in which Plaintiff accomplished these tasks and the fact that he was not consistently able to do so." (Doc. No. 18, pg. 8). Examining the ALJ's description of Plaintiff's daily activities, the Court finds no mischaracterization of the evidence cited therein. As the Court summarized above, Plaintiff himself reported to Dr. Weber that he could "independently help with housework, help with laundry, prepare simple meals," read articles from newspapers and magazines, use a computer, communicate with others, take medications, travel, and shop. (R. 382). Plaintiff vaguely suggested that his "physical and emotional concerns, including his symptoms of obsessive-compulsive disorder," "markedly affected" his abilities as he presented them to Dr. Weber. (*Id.*). However, he does not appear to have provided any specific examples of being limited in his daily activities at that time. (*See id.*). Accordingly, the ALJ's recitation of Plaintiff's own representation of his ability to function independently in many respects was not a mischaracterization of the evidence in question. Further, it was reasonable for the ALJ to determine that Plaintiff's representation of his daily

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 19) is GRANTED as specified above.

s/ Alan N. Bloch
United States District Judge

---

functioning to Dr. Weber was inconsistent with Dr. Weber's opinion that Plaintiff was markedly limited in attending to his own needs.

 The Court is similarly unmoved by Plaintiff's argument that the ALJ ignored Dr. Weber's opined interactional and concentrating/persisting/maintaining pace limitations.  Though it was brief, the ALJ explained that all of Dr. Weber's opinions—including these two moderate-to-marked limitations—were unsupported and inconsistent with the evidence of record.  The Court has already explained that the ALJ's unsupported finding required no further explanation because it is self-evident that Dr. Weber provided no meaningful support for his opinions.  (*See* R. 386).  As for consistency, it appears that the ALJ intended to address that factor by referring to an example of inconsistency—in the marked adapt-or-manage limitation—and letting that inconsistency reflect on the rest of Dr. Weber's opinions.  For present purposes, the Court will assume without deciding that it was inappropriate for the ALJ to decide that single inconsistency justified finding that all of Dr. Weber's opinions were unpersuasive.  Assuming that error, it appears to have been harmless.  "[A]dministrative decision[s] may be affirmed despite an oversight or error when it is evident that the flaw 'had no effect on the outcome of the case.'" *Fisher v. Comm'r of Soc. Sec.*, No. CV 20-1467, 2021 WL 4288313, at *6 (W.D. Pa. Sept. 21, 2021) (citing *Pack v. Comm'r of Soc. Sec.*, No. CV 20-1128, 2021 WL 3682151, at *2 n.2 (W.D. Pa. Aug. 19, 2021)).  The Court applies the doctrine of harmless error "cautiously."  *Id*.

 Dr. Weber did not define exactly what he meant by "moderate to marked" versus "marked" limitations.  (*See* R. 386).  However, looking at his employment of those terms to indicate greater limitations in adapting or managing oneself than, *e.g.*, interacting with others, Dr. Weber clearly drew a meaningful distinction between those two levels of limitation and opined that Plaintiff was less than markedly limited in interacting with others and concentrating/persisting/maintaining pace.  Therefore, Plaintiff's argument that the ALJ's failure to address those two limitations was harmful to the step-three determination because Dr. Weber "opined Plaintiff had up to marked limitations in more than two broad areas of mental functioning," (Doc. No. 18, pg. 9), is flawed.  Not only that, but the ALJ specifically found that Plaintiff suffered moderate limitations in interacting with others and concentrating/persisting/maintaining pace (R. 21) and indicated that he accounted for those moderate limitations in his assessment of Plaintiff's mental impairments for the RFC finding.  (R. 25).  Accordingly, the ALJ limited Plaintiff to "simple tasks," few "workplace changes," and "occasional interactions," with an allowance for five percent off-task time.  (R. 23).  There is no compelling reason to think that the ALJ would have further limited Plaintiff's RFC had he explicitly considered Dr. Weber's other opinions.  For this and the foregoing reasons, the Court will grant Defendant's motion for summary judgment.

ecf:    Counsel of Record